**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Barry ADAMS, Defendant–Appellant.**

**No. 03–30474.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 5, 2004.*

Filed Nov. 8, 2004.

---

* This panel unanimously finds this case suitable for decision without oral argument. See

Fed. R.App. P. 34(a)(2).

Kris A. McLean, United States Attorney's Office, Missoula, MT, for the plaintiff-appellee.

Before: KLEINFELD and CALLAHAN, Circuit Judges, and BERTELSMAN,** District Judge.

BERTELSMAN, Senior District Judge.

After a trial held before a Magistrate Judge, Barry Adams was convicted of using and occupying National Forest System land as part of a group of seventy-five or more persons without special-use authorization when such authorization is required, in violation of 36 C.F.R. § 261.10(k). His misdemeanor conviction was affirmed by the district court. Adams now appeals, arguing that the conviction violated his First Amendment rights. We affirm.

## I.

Adams is a participant in the Rainbow Family, "a loosely structured group of people who gather at least once a year on National Forest System land to pray for peace and discuss political and environmental issues." *United States v. Linick*, 195 F.3d 538, 540 (9th Cir.1999).[1] In July 2000, the Rainbow Family held a gathering in the Beaverhead National Forest in Montana.

Several months prior to this gathering, Adams contacted Forest Service Special

---

William F. Hooks, Helena, MT, for the defendant-appellant.

** The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. Annual gatherings of the Rainbow Family "have occurred in different National Forests on and around July 4 since 1972. These gatherings draw more than 20,000 participants and last for a month or more." *Black v. Arthur*, 18 F.Supp.2d 1127, 1130 (D.Or. 1998), *aff'd*, 201 F.3d 1120 (9th Cir.2000).

Agent William Fox, the Incident Commander of the Forest Service National Team charged with managing Rainbow Family Gatherings. Adams informed Fox that he was organizing the 2000 gathering. Fox told Adams that Adams would need a noncommercial "group use" permit if the number of persons at the gathering was to exceed seventy-five. At a subsequent meeting, Fox gave Adams a copy of these regulations. Ultimately, after discussing the contents of the permit application, Adams declined to complete the form, stating that he did not feel he could sign the application on behalf of the Rainbow Family.

The July 2000 Rainbow Family gathering in Beaverhead National Forest proceeded without a permit, attracting approximately 22,000 attendees. Adams was a participant. During the event, the Forest Service cited Adams and two other participants for violating 36 C.F.R. § 261.10(k).

Adams unsuccessfully moved to dismiss the charge against him, and he was convicted of one misdemeanor following a bench trial. Rejecting several First Amendment arguments by Adams, the district court affirmed the conviction. This appeal followed.

## II.

National Forest System regulations make it illegal to use or occupy National Forest System land or facilities "without special-use authorization when such authorization is required." 36 C.F.R. § 261.10(k). The regulations further explain that no such authorization is required for "noncommercial recreational activities" except those involving noncommercial group uses. 36 C.F.R. § 251.50(c)(3). "Group use" is defined as "an activity conducted on National Forest System lands that involves a group of 75 or more people, either as participants or spectators." 36 C.F.R. § 251.51.

It is undisputed that the 2000 Rainbow Family gathering in Beaverhead National Forest was a noncommercial group use of National Forest System land within the meaning of these regulations. On appeal, however, Adams argues that the National Forest System permit regulations are unconstitutional and that his motion to dismiss the charge against him should have been granted. He also argues that the "group use" regulations do not apply to individuals and that he was selectively prosecuted by the National Forest System officials.

## III.

We review de novo the denial of a motion to dismiss claiming a violation of constitutional rights. *United States v. Munsterman*, 177 F.3d 1139, 1141 (9th Cir.1999).

Adams's assertion that the National Forest System regulatory scheme is unconstitutional on its face and as applied need not delay us, for these arguments have already been addressed and rejected by this court. *See Black v. Arthur*, 201 F.3d 1120, 1123 (9th Cir.2000); *Linick*, 195 F.3d at 543. *See also United States v. Nenninger*, 351 F.3d 340, 344–46 (8th Cir. 2003) (holding that group use regulations are reasonable time, place and manner restrictions).

In *Linick*, we explained that the constitutionality of the group use permit scheme, as interpreted by the Forest Service, is determined under the traditional three-part test used to analyze regulations governing the use of public forums. *Linick*, 195 F.3d at 543. That is, the government may regulate the time, place, and manner of expressive activity that occurs in a public forum so long as the regulatory

scheme (1) is content-neutral, (2) is narrowly tailored to serve a significant government interest, and (3) leaves open "ample alternatives for communication." *Id.* (citing *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129–130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)).

■ Adams concedes the first two prongs of this test but argues that the permit scheme fails the third prong because it does not leave open ample alternatives for communication. We find this argument to be without merit.

The defendants in *Linick* were prosecuted for participating in a 1998 Rainbow Family gathering held in the Apache–Sitgreaves National Forest for which a noncommercial group use permit was not obtained. Applying the three-part test, we held the regulations constitutional. *Id.* As to the third prong, we reasoned:

> 36 C.F.R. § 251.56(a)(2)(vii) does not affect groups with fewer than 75 people. If a permit is not granted, the Forest Service is required to offer an alternative time, place, or manner if one is available. *Defendants also have not shown why it is imperative for [the] Rainbow Family to gather in a national forest, as opposed to some other location, to pray and to discuss their views. The scheme thus satisfies the third prong of the test.*

*Id.* (emphasis added) (citations omitted).

Adams's attempt to distinguish *Linick* is unavailing. His conclusory assertion that the national forests are "vital" to the Rainbow Family gathering represents, at most,

his personal preference. As another circuit has observed, these regulations do not preclude the use of state or private property for Rainbow Family gatherings, they do not affect the right of the Rainbow Family to meet on federal land that does not fall within the Forest Service jurisdiction, and they do not affect their right to gather in a National Forest in groups of fewer than seventy-five people. *United States v. Kalb,* 234 F.3d 827, 833 (3d Cir.2000).[2] We agree that the regulatory scheme leaves open ample alternatives for communication,[3] and we hold that it passes constitutional muster.

## IV.

■ Next, we reject Adams' argument that an individual cannot be prosecuted for violation of the "group use" permit requirement found in the National Forest System regulations. We find persuasive the reasoning of *Kalb,* in which the Third Circuit held that the fact that the Rainbow Family did not have a formal leadership structure did not preclude prosecution of individual gathering participants who had leadership or spokesperson roles. Specifically, the court stated:

> Not one court considering the application of 36 C.F.R. § 261.10(b) has hesitated to apply that section to individual defendants. We are not persuaded to chart a different course here. In rejecting appellants' argument, we are guided by the opinion in *United States v. Johnson,* 159 F.3d 892 (4th Cir.1998). There,

---

**2.** One other "ample alternative[ ] for communication" left open by the challenged regulation is that Adams, and the Rainbow Family can comply with the National Forest rules and regulations. They can express themselves in large groups in National Forests by getting permits and complying with their requirements.

**3.** As the Rainbow Family did not apply for a group-use permit, we have no reason to doubt whether the Forest Service would grant the permit, with or without conditions, or suggest other alternatives.

the court clarified that proof of a violation of section 261.10(k)

> requires the government to demonstrate: 1) use, 2) of National Forest land, 3) by a noncommercial group of 75 or more persons, either as participants or spectators, 4) without special use authorization.

*Id.* at 894. The record demonstrates that these requirements were satisfied with respect to each of the appellants. *Each knew of the permit requirement, that the gathering of which they were a part was large enough to implicate that requirement, and that an application for a permit had not been made. Armed with that knowledge, these individuals could have avoided liability under the regulations by opting not to participate in the gathering on National Forest land where it was clear that a special use authorization was required and had not been granted* . . . .

> To read the regulation and the penalty for its violation as inapplicable to individuals who use the National Forest System as part of a group, with deliberate disregard for the group permit requirement, would effectively eviscerate the special use authorization process. We decline to do so.

*Id.* at 831 (emphasis added) (citation omitted).

Adams asserts that an individual should not be punished merely because he or she was present during the time that improper group use occurred, arguing that to do so is to punish one for association, which is prohibited.

This hypothetical situation is not the case before the court. We do not suggest that, were an individual merely to join a group gathered in a national forest, of a size such that a permit was required but had not been obtained, that the individual would be guilty of "[u]se or occupancy of National Forest System land or facilities," the misdemeanor defined by the regulation. Adams was an organizer of this gathering of 22,000 people, so the case of the mere individual who joins in without responsibility for the large gathering is not before us.

Adams knew of the permit requirement well in advance of the gathering; he was a self-identified organizer of that event; he knew that the gathering would be large enough to trigger the permit requirement; and he willingly participated in the group use of the National Forest System land knowing that a permit had not been obtained. This is more than sufficient to prove that Adams engaged in prohibited use of National Forest System land under 36 C.F.R. § 261.10(k).

## V.

■ Finally, we find Adams' argument that he was selectively prosecuted to be without merit. The evidence showed that the Forest Service cited Adams (along with two other participants) based on his role as an organizer of the 2000 gathering. As the district court observed:

> The Government has broad, but not unfettered discretion in deciding whom to prosecute. *Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). The Government can be selective choosing whom to prosecute[;] however, it cannot base its decisions on factors "such as race, religion, or other arbitrary classification[s]." *United States v. Pitts,* 908 F.2d 458, 461 (9th Cir.1990).

Here, Adams was prosecuted based on his role as an apparent organizer and his participation in the gathering. This decision was not based upon an impermissible factor and was within the Government's discretion. That others were not

ticketed does not mean that they were not potentially criminally liable. Adams' argument that the failure to ticket all attendees shows a discriminatory effect is without merit. By this argument, the Government would always be required to ticket all persons violating a law or ticket no one. So long as the Government's choices do not have a discriminatory purpose or effect, they are legal.

**AFFIRMED.**